UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION—BAY CITY

In re:

                                                            Case No. 18-21439

IN RE EUGENE J PRINCO,                                      Chapter 13

          Debtor.

                                                            Hon. Daniel S. Opperman
_____/

GERALD C. SOUCH,

          Plaintiff,

v.

                                                            Adv. Proc. No. 18-2061

EUGENE J PRINCO,

          Defendant.
_____/


OPINION REGARDING ADVERSARY PROCEEDING

Introduction and Undisputed Facts

          The Defendant in this Adversary Proceeding is the Debtor, Eugene Princo. Defendant

filed a Chapter 13 bankruptcy on July 25, 2018, and listed a debt owing to Gerald C. Souch as a

nonpriority unsecured, disputed debt in the amount of $58,000.00 for a "lawsuit." Defendant's

Chapter 13 Plan was confirmed on October 27, 2018. Prior to confirmation, Gerald Souch filed a

letter, which the Court determined should be considered an Adversary Complaint objecting to the

dischargeability of debt, and this Adversary Proceeding was accordingly opened on October 16,

2018, listing Gerald Souch as the Plaintiff. Plaintiff is the nephew of Defendant. Plaintiff is

currently incarcerated in Arizona and has been during the entire pendency of this proceeding.

1

Plaintiff alleges that Defendant misused funds to be held for Plaintiff from Plaintiff's parents (the "Funds"). In response, Defendant alleges that he in good faith invested the Funds acting under a valid power of attorney signed by Plaintiff. Defendant's investments were not successful, and all Funds were eventually lost. Plaintiff later sued Defendant in Arizona, and Defendant incurred legal fees. Defendant filed a Chapter 13 bankruptcy on July 25, 2018 due to these legal fees, along with the pending lawsuit, as well as a few other small debts.

Pursuant to this Court's invitation in its June 27, 2022 Order Directing Parties to File Statement Regarding Whether the Court Should Issue a Scheduling Order for Adversary Proceeding To Be Submitted to the Court on the Pleadings, Plaintiff and Defendant agreed to waive an in-person trial and that all issues in this Adversary Proceeding would be decided based upon the submission of briefs. These briefs were to include proposed findings of fact and conclusions of law, which were to "reference and attach all documents upon which the parties rely." The Court entered a Scheduling Order on August 4, 2022 setting deadlines for initial briefs of October 7, 2022, directing the parties to "stipulate to facts to the extent possible." The Court also directed the parties to file responsive briefs by November 4, 2022.

The Court has reviewed all pleadings in this matter, and for the reasons stated below, concludes that Plaintiff has failed to meet his burden of proof under 11 U.S.C. § 523 as the nondischargeability of the debt owed to him, and otherwise concludes that there is no impediment to a Chapter 13 discharge as applicable to this creditor under 11 U.S.C. § 1328.

<u>Alleged Facts and Arguments of Plaintiff</u>

Attached as Exhibit "AAD" to Plaintiff's Brief filed on September 27, 2022, Pages 34-35, is his Affidavit. This Affidavit is dated August 18, 2022, and signed under penalty of perjury.

2

The Court has reviewed Plaintiff's Affidavit, which states his version of the facts and his position with regard to this matter, and which this Court accepts as Plaintiff's offer of proof in this matter:

A. At all times prior to the filing of the state civil proceedings, Plaintiff appointed the defendant to act in a fiduciary capacity over plaintiff['s] trust account, but placed a note thru the Bank of America that the holder of the Power of Attorney was not to have access to the funds, which defendant admitted he knew of this when attempting to withdraw funds.

B. Plaintiff's belief is that the position of the defendant and his statement are misleading or his letters to Plaintiff are misleading, but in any event, Plaintiff need not show which is true, only that inconsistencies between statements of the defendant are present.

C. Plaintiff['s] belief is that the defendant has in fact submitted false and misleading pleadings in his answers to Plaintiff's interrogatories.

D. Plaintiff declares he filed his proof-of-claim but does not know if the form was properly filled out.

E. Plaintiff believes Defendant took his funds and used the funds for his own purpose then made up facts that the IRS seized the funds, but in no event Plaintiff never made the funds a gift to Defendant.

F. Plaintiff had provided Defendant two Power-of-Attor[neys] (one for finance investments) (one for property) and specified in "Arizona Only", not a free-will to invest as defendant chose in any state.

G. Plaintiff declares had Defendant found an investment firm he would have released the funds to the firm, but in no event to Defendant.

The Court has reviewed and accepts the following Exhibits as Plaintiff's offer of proof in support of his position[1]:

A. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated September 3, 2006: Plaintiff offers this letter as proof of Defendant's knowledge that the power of attorney did not allow access to Plaintiff's account at Bank of America.

---

[1] The exhibit lettering is not sequential. The Court follows the lettering order and labels Plaintiff uses.

3

B. Letter from Defendant (signed "Eugene J. Princo") to Plaintiff dated September 8, 2008: Plaintiff offers this letter as proof of Defendant's acknowledgement of him acting under a power of attorney for Plaintiff and as Plaintiff's attorney-in-fact.

C. Letter from Defendant to Plaintiff dated September 11, 2009 (Page 1 only and missing signature): Plaintiff offers this letter as proof of Defendant's admission he accessed the Funds and invested $54,000 of the Funds.

D. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated March 23, 2010: Plaintiff offers this letter as proof of Defendant's claim that the IRS seized certain properties in which the Funds had been invested.

E. Letter from Defendant to Plaintiff dated December 16, 2010 (Page 1 only and missing signature): Plaintiff offers this letter as proof of Defendant's claim that the IRS seized certain properties in which the Funds had been invested.

F. Letter from Defendant to Plaintiff dated July 6, 2011 (Page 1 only and missing signature): Plaintiff offers this letter as proof of Defendant's statement that two separate court cases had been filed regarding the properties in which the Funds had been invested.

H. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated December 15, 2011: Plaintiff offers this letter as proof of Defendant's statement that he "would work" to get Plaintiff's money back "at least to the $54,000 mark."

J. Letter from Defendant (signed "Jim") to Plaintiff dated August 3, 2012: Plaintiff offers this letter as proof of: the Funds being in an account in Defendant's name; Defendant's acknowledgment of the lawsuits regarding the properties in which the Funds were invested; and Defendant's assurance to Plaintiff that the Funds would be returned to Plaintiff once refunded to Defendant.

S. Letter from Byron D Endo, Disclosure Manager, IRS, to Plaintiff dated January 29, 2015: Plaintiff offers this letter as proof that Defendant was not listed as a co-plaintiff on the PACER website in any litigation.

T. Power of Attorney for Real Estate and Power of Attorney for Finances (Limited Power), both dated July 3, 2006: Plaintiff offers these documents as proof of the scope of Defendant's authority to take certain actions on Plaintiff's behalf, and in particular to purchase real estate, investment stocks, bonds, certificates of deposit in the State of Arizona only.

V. Letter from Defendant to Plaintiff (unsigned and undated, with a received note of December 6, 2016): Plaintiff offers this letter as proof of Defendant receiving a

4

payment from the real estate investment.

W/X. Plaintiff's Bank Statements for Bank of America Checking and Savings accounts for time periods 8-17-2007 to 9-19-2007 and 10-18-2007 to 11-19-2007: Plaintiff offers these bank statements as proof that the Funds were in Plaintiff's accounts, and the accounts were closed in the 10-18-2007 to 11-19-2007 statement.

Y. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated February 24, 2006: Plaintiff offers this as proof that Defendant accessed the Funds in Plaintiff's bank accounts, which exceeded the scope of the powers of attorney.

AA. Letter from Defendant to Plaintiff dated April 7, 2006 (Page 1 only and missing signature): Plaintiff offers this as proof of Defendant's acknowledgement that he was supposed to open an account with Hodge Capital Management with an initial deposit of $5,000.00.

CC. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated May 5, 2006: Plaintiff offers this as proof of Defendant's acknowledgement that he was supposed to open an account with Hodge Capital Management with an initial deposit of $5,000.00.

YY. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated October 6, 2010: Plaintiff offers this as proof of Defendant's intent to pursue legal action regarding the liens placed on the properties by the IRS.

AAA. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated April 12, 2011: Plaintiff offers this as proof regarding litigation concerning one of the properties purchased with the Funds.

AAB. Letter from Defendant (signed "Uncle Jim") to Plaintiff dated January 8, 2009: Plaintiff offers this as proof as Defendant's inconsistencies between statements in this letter and his bankruptcy documents.

Finally, Plaintiff offers as proof Defendant's answers to interrogatories. These are attached as Exhibit ZZ to Plaintiff's Brief dated September 27, 2022. The Court has reviewed and accepts such as his offer of proof. Plaintiff argues that such are inaccurate and inconsistent and demonstrate "[d]efendant had attempted to deceive and/or mislead when giving answers to interrogatories." Specifically, Plaintiff states in Pages 4 through 7 of his Brief filed on September

5

27, 2022:

(A) Defendant was asked if he was acting in a fiduciary capacity as power-of-attorney over Plaintiff bank accounts. Defendant denied this question. In exhibit A, Defendant claimed he was power-of-attorney over Plaintiff's funds.

(B) In the 2nd, 3rd, and 4th paragraph, Defendant was asked about opening an account for $5,000.00 at Hodge Capital Management (Texas firm), when was it closed, the account number, and how much interest it gained. Defendant stated: "As I have stated before, I have no recollection of a Hodge Capital Management account." Defendant was served with exhibits AA-CC prior to service of the interrogatories which clearly show he received a check made to Hodge Capital Management and he was to open the account.

(C) The 5th question asked was the hiring of an attorney for filing claims against the IRS. Defendant stated: "I never made such claim. I was never personally involved in any litigation with the IRS." Exhibit YY: "My remaining partners and 'I' are trying to file some sort of legal action against the IRS . . . ." Exhibit AAA; and in Exhibit YY, defendant state[s] he is taking action against the IRS. Exhibit F defendant claimed he filed two separate claims; exhibit AAA defendant claimed he has hired an attorney; exhibit J refers to his lawsuit in Virginia & Georgia; exhibit X letter from IRS which states PACER website was reviewed and defendant's name was not listed as a co-plaintiff against the IRS.

(D) Question 6 & &, see above response and exhibits.

(E) In question 8, Plaintiff asked if he had received a payment from the Real Estate Group, what was the amount, what is the name and address of the Real Estate Group. Defendant's answer: Please provide a copy of the reference[d] letter. (this letter was previously provided to defendant's counsel prior to the request for interrogatories). Defendant stated he never made any such claim, and this question has already been debunked as a lie in previous court documents. Exhibit V states otherwise, and this has never been debunked as a lie in any court proceedings.

Plaintiff's case is based upon his argument that the subject debt should be found nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6). In his Brief filed on September 27, 2022 at Pages 10 and 11, Plaintiff summarizes his allegations and position in this Adversary Proceeding:

Plaintiff has shown that any reasonable jurist would conclude that

6

defendant acted with malice by his position acting in a fiduciary capacity acting as power-of attorney over another person['s] trust account which defendant admitted he was not authorized access to the funds.

Defendant declared he opened an account thru [sic] Hodge Capital Management . . . only to find out he never opened an account then also denied any knowledge.

Defendant declared he invested Plaintiff's funds in a real estate group then a month later had advised the IRS seized the funds, this could be a common tactic to cover up funds that were embezzled from another person.

Defendant declared when he got the funds back he would return every penny, but when defendant claimed he received a payment from this alleged real estate group, he complained that Plaintiff didn't thank him, but Defendant never advised Plaintiff until after he was served on the state case, and defendant kept the entire amount if anything was received.

Defendant's answers to interrogatories are so in conflict with the letters sent to this Plaintiff, it is hard to believe what is true by Defendant.

Plaintiff filed a Reply Brief on November 2, 2022, reiterating points previously made, and specifically addressing the statute of limitations and laches argument made by Defendant as well as asking this Court to, as an alternative to a finding of nondischargeability, to stay the proceedings here to allow the state court to make the nondischargeability determinations. Attached to Plaintiff's Reply is a second Affidavit executed on October 17, 2022, which the Court accepts an offer of proof. The October 17, 2022 Affidavit states:

A. Plaintiff declares that there was "no trust" over Plaintiff's funds or his bank account.

B. Plaintiff declares that his Power-of-Attorneys to Defendant were to be used for investments only in the State of Arizona.

C. Plaintiff declares he never received a reply to his Request for Production of Documents in his state court proceedings.

D. Plaintiff declares contrary to Defendant's opinion, Plaintiff's state claim was timely filed within the three year statute of limitation under clearly established

7

state law.

E. Plaintiff declares Defendant misappropriated Plaintiff's funds by his own when going to other states other than his own to gain access to Plaintiff's funds.

F. Plaintiff declares Defendant abused the Power-of-Attorneys by finding a state that would accept the Power-of-Attorneys without Defendant's signature, thus creating an abuse of discretion and abuse of authority while acting in a fiduciary capacity as Power-of-Attorney, which was not known until receipt of Defendant's opening brief.

G. Plaintiff declares he took Defendant's letter as true when received, but tends to now believe them to defraud Plaintiff.

<u>Alleged Facts and Arguments of Defendant</u>

Defendant's argument is summarized in his "Summary of the Argument" paragraph in his proposed findings of fact and conclusions of law as follows:

> The Defendant argues that this debt, allegedly owed to Plaintiff is barred by both the Statute of Limitations and Laches, and is otherwise dischargeable under his Chapter 13 bankruptcy proceeding as Plaintiff has not proven the required elements under any of his theories for exception to discharge.

In support of this argument, Defendant states his version of the facts and procedural history, which this Court accepts as Defendant's offer of proof in support of his above argument. Defendant mostly agrees with Plaintiff as to the general timeline of events. Defendant, however, does not agree with the intentions and effect of these events and the interpretations to be made with regard to Plaintiff's offered exhibits and Affidavit. Defendant does not confirm the existence of a trust, at any time in the past, or its current status. Defendant agrees that the "vast majority" of the Funds were lost, that communications regarding the loss of the Funds was made by Defendant to Plaintiff "as early as 2010 or before," and that communications ceased in 2012. As to the proceedings in the Arizona State Court, Defendant states that prior to cross-motions for

8

summary disposition being heard in the state court, he filed the instant Chapter 13 bankruptcy case on July 25, 2018, which included Plaintiff as a creditor. Defendant's Chapter 13 Plan was confirmed, payments under the Chapter 13 Plan made to all creditors, including Plaintiff, and the Chapter 13 Plan payments are now complete.

Defendant attaches three exhibits to his proposed findings of fact and conclusions of law, and references two exhibits attached to Plaintiff's pleadings, which this Court accepts as his offer of proof in support of his argument:

A. Letter from Defendant to Plaintiff dated September 8, 2006; Defendant offers this as proof that the Funds may have originally been in a trust held for the benefit of Plaintiff or held directly in Plaintiff's name. This is the same letter offered by Plaintiff as his Exhibit B.

B. Power of Attorney for Real Estate and Power of Attorney for Finances (Limited Power), both dated July 3, 2006; Defendant offers this as proof that Plaintiff granted Defendant power of attorney over Plaintiff's affairs and that purchases were allowed "to be in the name of the principal"--Plaintiff. These same documents are offered by Plaintiff as his Exhibit T.

C. State Court Complaint filed in Arizona Superior Court for Mohave County date stamped on September 11, 2017; Defendant offers this as proof that Plaintiff "does not specifically list under which theory he seeks to declare the debt non-dischargeable" and/or has not "illuminated which theory he seeks to recover under."

D. Plaintiff's Exhibits W/X, which are Plaintiff's Bank Statements for Bank of America Checking and Savings accounts for time periods 8-17-2007 to 9-19-2007 and 10-18-2007 to 11-19-2007; Defendant offers these as proof that Plaintiff had outside funds in his own name at the relevant time.

E. Plaintiff's Exhibit E, which is a Letter from Defendant to Plaintiff dated December 16, 2010 (Page 1 only and missing signature); Defendant offers this letter as proof Plaintiff's knowledge at the relevant time that the funds had been lost.

<u>Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the

9

dischargeability of particular debts).

Potential Nondischargeability of this Debt in Chapter 13

Plaintiff seeks a finding of nondischargeability of $53,950.00, plus "13% interest from 2006 (01) to when paid in full," due to Defendant's alleged "misappropriation of funds while acting in an official capacity as a trustee of another person's trust [and] misuse of a power of attorney."[2] A Chapter 13 discharge is limited in certain respects by 11 U.S.C. § 1328(a). Specifically, Section 1328(a)(2) lists certain debts as nondischargeable in a Chapter 13 case, which includes debts "of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) or section 523(a)." Upon a reading of Plaintiff's pleadings, the Court concludes that Plaintiff's Adversary Proceeding is one seeking nondischargeability of an alleged debt owed him pursuant to 11 U.S.C. § 523(a)(2) and (a)(4). Section 1328(a)(2) excludes Section 523(a)(6) from the list of potential nondischargeable debts, so Plaintiff's claims under that subsection would not apply in this Chapter 13 proceeding.

Nondischargeability under Section 523(a)(2)(A) & (B)

Although this is a Chapter 13 proceeding, reference to Chapters 5 and 7 of the Bankruptcy Code is necessary.

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud or by use of a

---

[2] Amended Adversary Proceeding Cover Sheet, Docket No. 9. Plaintiff also checks the box for "Recovery of money/property – other." The Court's review of the pleadings all point to the request for a finding of nondischargeability of this debt, which would have the end goal of recovery, but is not the current request for relief before the Court.

10

false statement in writing.  11 U.S.C. § 523(a)(2)(A) & (B). Section 523(a)(2)(A) & (B)

provides:

> (a) A discharge under section 727 . . .  does not discharge an individual debtor from any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

>> (B) use of a statement in writing –

>>> (I) that is materially false;

>>> (ii) respecting the debtor's or an insider's financial condition;

>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

>>> (iv) that the debtor caused to be made or published with intent to deceive.

Subsections (A) and (B) are mutually exclusive.  A claim based on false financial statements

must be brought under subsection (B) and the special conditions set forth in subsection (B) must

be met.  *Collier on Bankruptcy*, ¶ 523.08[1] at 523-42.1

Section 523(a)(2)(A)

> To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998).

Whether a debtor possessed intent to deceive is measured by a subjective standard.  *Id.*

> The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of

11

property obtained through fraud. *XL/Datacomp, Inc. V. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994).

<u>Intent under Rembert</u>

Intent, under *Rembert*, is measured subjectively. 141 F.3d at 281. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788, (1st Cir. 1997) (citations omitted). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002)(quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (B.A.P. 10th Cir. 2000) (citations omitted)). "A creditor can present proof of surrounding circumstances from which a [c]ourt can infer a dishonest intent." *Comm. Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 199 (Bankr. W.D. Tenn. 2001).

As explained by the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740 (Bankr. E.D. Tenn. 2003):

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made. Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to

12

determine if she possessed the requisite intent to deceive the Plaintiffs. Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor. *XL/Datacomp, Inc. v. Wilson (in re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994).

*Id*. at 760.

Section 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge debts incurred by use of a false statement in writing. To prevail on a § 523(a)(2)(B) claim, a plaintiff must establish the following elements regarding the writing:

(i) that [it] is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive.

*Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985).

A document that is "written, signed, adopted or used by the debtor" qualifies as a statement in writing under this section. *Insouth Bank v. Michael (In re Michael)*, 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001).

Under the first element, a written statement is materially false if the information in it "offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit." *Id*., *citing In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985).

The second element requires that the statement refer to the debtor's financial condition.

The third element requires the plaintiff/creditor to establish reasonable reliance on the written statement. Reasonable reliance is not defined in the Bankruptcy Code. In the Sixth Circuit, "whether a creditors' reliance was reasonable is a factual determination to be made in light of the totality of the circumstances. *BankBoston Mortg. Corp. v. Ledford (In re Ledford)*,

970 F.2d 1556, 1560 (6th Cir. 1992), *cert. denied*, 113 S.Ct. 1272 (1995).

The Sixth Circuit has cited five factors to apply to determine reasonable reliance:

> (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*In re Ledford,* 970 F.2d 1560.

The reasonableness requirement is not a rigorous one. "The creditor need establish only its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact." *Bank One, Lexington, N.A. v. Woolum (In re Woolum),* 979 F.2d 71, 76 (6th Cir. 1992). Although the requirement bars non-dischargeabililty in any case where the creditor's asserted reliance was so unreasonable as to negate the existence of actual reliance, the true purpose of the requirement is to screen out creditors who knowingly solicit false financial statements to set up exceptions to dischargeabililty. *See In re Ledford,* 970 F.2d 1560.

The fourth element requires that the debtor make or publish the statement with "intent to deceive."

> The standard. . . is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied. . . . That is, the debtor must have been under some duty to provide the creditor with his financial statement; but full discharge may be disallowed if the debtor either intended the statement to be false, or the statement was grossly reckless as to its truth.

*Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985) (citations omitted).

14

<u>Standard for Non-Dischargeability Under § 523(a)(4)</u>

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

> (1) a fiduciary relationship
>> (a) in the form of an express trust or
>> (b) technical trust relationship;
> (2) breach of that fiduciary relationship; and
> (3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *Garver*, 116 F.3d at 180 (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel*, 565 F.3d at 968.

In *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), the Supreme Court decided the

level of intent required for defalcation under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 273-74 (internal quotation marks and citation omitted).

Burden of Proof

Section 523 Generally

It is well-settled that a creditor seeking a judgment of nondischargeability must prove each of the elements of its complaint by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991). Moreover, the Sixth Circuit has made clear that exceptions to discharge are construed strictly against the creditor and must give the benefit of the doubt to debtor. *Rembert v. AT&T Universal Card Servcs. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

Specifically with regard to Section 523(a)(4), Plaintiff must first establish the existence of an express or technical trust, the Defendant's status as the trustee of the trust, and thus, the existence of a fiduciary duty. Second, if a trust is found to exist, Plaintiff must prove that the trustee, the Defendant, failed to perform such a duty. If Plaintiff has met the burden of proof on these two requirements, the burden of proof shifts to the Defendant as trustee to prove actions taken were in good faith and made with full disclosure. *Cappella v. Little (In re Little)*, 163 B.R.

497. 500 (Bankr. E.D. Mich. 1994).

Analysis

As stated above, the Court accepts all documents offered by Plaintiff and Defendant as an offer of proof in the absence of live testimony and formal admission of exhibits. Because the Court is unable to assess the veracity of Plaintiff and Defendant as witnesses and the authenticity of the documents offered, the Court accords equal weight to all submissions from both Plaintiff and Defendant. Starting with this level playing field, the Court analyzes this case as follows.

Plaintiff's Affidavits:

Plaintiff attaches an Affidavit dated August 18, 2022 to his initial Brief, and an Affidavit dated October 17, 2022 to his Reply Brief. Notably, Plaintiff states what his beliefs are in regard to Defendant's conduct and actions. Plaintiff states in his August 18, 2022 Affidavit that it is his "belief" that: Defendant has submitted misleading and false responses to Plaintiff's interrogatories; Defendant's statements and letters to Plaintiff are misleading and inconsistent; and Defendant used the Funds "for his own purpose" and later "made up facts that the IRS seized the funds." Plaintiff's "beliefs" are again stated in the second, October 17, 2022 Affidavit in which Plaintiff "declares" Defendant "misappropriated" the Funds and "abused" the powers-of-attorney when Defendant invested outside the State of Arizona. Plaintiff "declares" in the October 17, 2022 Affidavit that "there was 'no trust' over Plaintiff's funds or his bank account." This statement is contrary to Plaintiff's Section 523(a)(4) argument because the existence of a trust is required for a finding that Defendant was acting in a fiduciary capacity.

Plaintiff's Affidavits do not establish Defendant's intent to deceive Plaintiff into allowing Defendant access to the Funds. Under Section 523(a)(2)(A), intent is measured subjectively

17

under the totality of the circumstances, and Plaintiff's beliefs about Defendant's state of mind at the relevant times is not sufficient to prevail on a Section 523(a)(2)(A) claim. Further, Because these Affidavits are not a written statement of Defendant concerting his financial condition, Section 523(a)(2)(B) is inapplicable. Finally, Plaintiff's Affidavits do not establish the existence of the required fiduciary relationship through an express or technical trust because the Affidavits are based only upon Plaintiff's beliefs in this regard, and in the October 17, 2022 Affidavit, Plaintiff directly denies the existence of a trust over the funds at all.

Plaintiff's Exhibits:

Plaintiff attaches fifteen letters to Plaintiff from Defendant to support his position as to Defendant's knowledge concerning his power and duties to act on Plaintiff's behalf under the powers-of-attorney, Defendant's access to the Funds and Defendant's use of the Funds. The Court has reviewed these letters and concludes that these letters show that Defendant did keep in touch with Plaintiff during the indicated time period on a personal level, as well as to provide updates as to the status of Defendant's investments of the Funds. These letters do not show an intent to defraud Plaintiff, do not concern Defendant's financial condition that was materially false, and do not establish the existence of a trust giving rise to a fiduciary relationship. Plaintiff also attaches the two powers-of-attorney, which state the scope of Defendant's authority to act on Plaintiff's behalf. Because both Plaintiff and Defendant have offered these powers-of-attorney as Exhibits in support of their positions, the Court concludes there is no dispute as to their authenticity and relevance. Plaintiff also attaches the letter from Byron Endo with the IRS to bring Defendant's credibility into question. Finally, Plaintiff attaches two bank statements to show that the Funds were in his accounts in August/September of 2007, and then the accounts

were closed in October/November 2007.

These exhibits do not establish Defendant's intent to deceive Plaintiff into allowing Defendant access to the Funds. Under Section 523(a)(2)(A), intent is measured subjectively under the totality of the circumstances, and the Court concludes that the letters from Defendant to Plaintiff establish that Defendant intended to invest the Funds for Plaintiff's benefit. These letters do not show that Defendant intended to deceive Plaintiff at the time Defendant was given access to the Funds. The letters also do not amount to a false statement in writing concerning Defendant's financial condition used to acquire the Funds. In any event, any incurrence of a debt, if indeed that is what the Funds represent, would have been incurred prior to these letters, making them irrelevant for Section 523(a)(2)(B) purposes. The letters do not create an express or technical trust for the required fiduciary relationship, and further do not demonstrate any defalcation or misappropriation under Section 523(a)(4).  The powers-of-attorney are legal documents which do not show Defendant's intent and/or financial condition at the relevant time under either Section 523(a)(2)(A) or (B) and do not demonstrate the existence of an express or technical trust for the fiduciary relationship required under Section 523(a)(4).The IRS letter and the bank statements offer facts not relevant to intent, Defendant's financial condition and the establishment of a trust/fiduciary relationship for Section 523(a)(2)(A), (a)(2)(B), and (a)(4) purposes.

Plaintiff's Offer of Defendant's Answers to Interrogatories:

Plaintiff points to Defendant's answers to interrogatories, which he asserts are inaccurate and inconsistent, and support a finding that Defendant's answers to interrogatories are not correct and in fact were given with an intent to "deceive and/or mislead." It appears Plaintiff is

19

attempting to raise the issue of Defendant's credibility, but the Court cannot make the finding Plaintiff proposes based upon Plaintiff's bare allegations in this regard. Even if the Court accepted these allegations as true, such are completely unconnected with the acquisition of the Funds by Defendant as the relevant time and Defendant's intent, financial condition and status as acting in a fiduciary capacity for Section 523(a)(2)(A), (a)(2)(B) and (a)(4) purposes.

While Defendant has offered five exhibits in support of his position, the Court concludes that reference to such is unnecessary because Plaintiff has not met his burden of proof under Section 523(a)(2)(A), (a)(2)(B) and (a)(4) by a preponderance of the evidence. Under Section 523(a)(2)(A), Plaintiff has not shown Defendant's fraudulent intent in acquiring access to the Funds. Plaintiff has shown that Defendant's investments of the Funds were not successful and, as a result, the Funds were lost. Defendant does not dispute this. It is also true that Defendant was an uncle of Plaintiff, so the Court may infer a close relationship. Taken together, however, the totality of the circumstances at the time Defendant acquired access to the Funds and subsequent conduct of Defendant through the letters do not demonstrate Defendant's fraudulent intent.

The record is devoid of a writing respecting Defendant's financial condition during the relevant time upon which Plaintiff relied when allowing access to the Funds. The hypothetical existence of a writing would also require that it be proven to be materially false and that Plaintiff relied upon such, which are facts (alleged or otherwise) also absent from the record in this case. Thus, Plaintiff has failed to meet his burden under Section 523(a)(4) as well.

As to Section 523(a)(4), Plaintiff has failed to meet his burden of proof as to the existence of an express or technical trust, Defendant's status as the trustee of the trust, and thus, the existence of a fiduciary duty. Plaintiff relies upon his own beliefs, the powers-of-attorney,

and the letters in support of the existence of a trust, but such does not create the required trust and thus fiduciary relationship. Specifically, the powers-of-attorney are unsigned by Defendant and do not contain an expressed intent to create a trust. At most, an agency relationship was accepted or intended.[3]  Again, the record is inconsistent in that at times Plaintiff alleges a trust existed, at other times he disavows a trust.

The Court reaches these conclusions without addressing many of the arguments raised by Defendant. While Defendant's offer of proof has some inconsistencies, the Court would find that Defendant has answered Plaintiff's claims to the point that Plaintiff has not met his burden of proof.

Conclusion

Based upon the record before the Court, the Court concludes that Plaintiff has failed to meet his burden of proving by a preponderance of the evidence that the debt owing to him is nondischargeable under 11 U.S.C. § 523. Because the debt at issue is dischargeable, the Court does not rule on the statute of limitations and laches defenses of Defendant. The Court further concludes that there is no impediment to a Chapter 13 discharge as applicable to this creditor under 11 U.S.C. § 1328.

The Court will enter an appropriate order.

**Signed on February 27, 2023**



/s/ Daniel S. Opperman

**Daniel S. Opperman**
**United States Bankruptcy Judge**

---

[3] The copies of the powers-of-attorney submitted to the Court contain the unsigned "Signature of Attorney-In-Fact" and "Acknowledgement of Attorney-in-Fact" assuming "the fiduciary and other legal responsibilities and liabilities of an agent."